Howard A. Zeller, J.
This is a proceeding brought pursuant to article 78 of the Civil Practice Act to compel the Village of Waverly to provide a supply of water for a fire sprinkler system in a building owned by the petitioner, Penn-York Lanes, Incorporated.
Penn-York owns land located partially within the Village of Waverly and partially outside the village and within the Town of Barton. It has erected a building housing a restaurant and bowling alleys on that part of its real property located outside the village. Penn-York has an investment of more than a half a million dollars in its enterprise. It has its own private *151 well for water but wishes to attach its sprinkler system to the village water supply to comply with fire underwriter standards and reduce its fire insurance premiums. Penn-York claims that its sprinkler system in absence of a leakage or fire would use only a fraction of the amount of water used annually by the average village resident. It also asserts that in case of a fire, the village water would be used in fighting it as the village has contracted to furnish fire protection to a Fire Protection District in which the restaurant and bowling alley building is located. A village water main is located not far from the building and Penn-York would pay all costs of connecting its sprinkler system to the main.
Three times during 1960 (the last time on August 29, 1960), Penn-York requested the Board of Water Commissioners of the village to permit it to connect its fire sprinkler system to the village water supply. Each time the board has refused. Claiming that the board’s action is “arbitrary”, Penn-York instituted this proceeding.
Section 232 of the Village Law provides that “ The board of water commissioners may sell to a corporation, individual or water district outside the village the right to make connections with the mains or reservoirs of such village for the purpose of drawing water therefrom ’ ’. This section is permissive in nature and places no obligation upon the board to sell even “surplus” water to an outside user even though the benefit to him be great and the disadvantage to the village small. Not only is there no obligation upon a board to sell water outside a village, but there is a duty upon a board not to sell water outside a village “ if thereby the supply for the village or its inhabitants will be insufficient.” (Village Law, § 232.)
Two years before Penn-York made any application to buy water for use outside the village, the Board of YVater Commissioners at a regular meeting held on January 27, 1958 adopted the following resolution: “The surface water supply at this time has an average demand of 580,000 Gallons per day, and the estimated yield of this supply is 700,000 gallons per day. It would be unwise to commit this excess of approximately 120,000 gallons per day to use outside the Village, so, therefore, no new contracts will be negotiated to supply water outside the complete limits of the Village of Waver!y, Tioga Countv, New York.”
The board’s judgment that the existing supply of water compared to the needs of the village make it unwise to enter any new contracts to sell water outside the village has been substantiated by engineers who recently surveyed the village water *152 supply system and needs and recommended that further demands upon consumption be limited. It is true that the present foreseeable consumption of the village’s water by Penn-York’s sprinkler system would be small. But the board believes it should make no exception to its policy as one exception would make it more difficult to deny other requests.
It is immaterial that an unimproved portion of the petitioner’s land is within village limits. The fact that an owner of real property has a portion of land within the corporation limits does not require a village to act differently in regard to the portion of land outside the village than would be expected if all the land were wholly outside the village.
It is fundamental that the courts should not interfere with an administrative decision of a municipal official or board unless it is permeated by bad faith or has no rational basis. There is no charge or indication of bad faith in this proceeding and the board’s action is based upon law and reason.
The petition should be dismissed upon the merits, without costs. Submit order accordingly.